UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VICKI R P.,

                   Plaintiff,

    v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

Case No. 2:25-cv-00138-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 1, Complaint.

Plaintiff filed an application for DIB on May 17, 2021, alleging disability beginning September 1, 2015. AR 168-69. Her date last insured was December 31, 2018. AR 17. The application was denied initially and upon reconsideration. AR 47-65. ALJ Erin Justice conducted a hearing on March 5, 2024, and, on March 14, 2024, issued an unfavorable decision finding plaintiff not disabled. AR 14-46. The Appeals Council declined the request for review and plaintiff filed an appeal to this Court. AR 1-6.

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## DISCUSSION

The ALJ determined that plaintiff's asthma and subglottic stenosis, status-post dilation were severe impairments, and that these impairments did not meet or medically equal a listed impairment. AR 19-20. The ALJ found that plaintiff could perform medium work as defined in 20 C.F.R. § 404.1567(c) except that she must avoid concentrated exposure to extreme temperatures and must avoid even moderate exposure to fumes, dust, and pulmonary irritants. AR 20.

Based on hypotheticals posed to the vocational expert at the hearing, the ALJ concluded that plaintiff could perform her past relevant work as a reservation clerk. AR 22. Alternatively, the ALJ found she could perform work as a store laborer, rural mail carrier, or meat clerk. AR 23.

Plaintiff argues that the ALJ erred by not properly assessing the Listings and by not properly assessing her subjective symptom testimony. Dkt. 7 at 2.

**1. Whether the ALJ Properly Assessed the Listings**

At step three of the disability evaluation process, the ALJ must evaluate the claimant's impairments to decide whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d). If they do, the claimant is deemed disabled. *Id.*

Listed impairments are purposefully set at a high level of severity because they automatically end the five-step inquiry, before residual functional capacity is even considered. *Kennedy v. Colvin,* 738 F.3d 1172, 1176 (9th Cir. 2013). The burden of proof is on the claimant to establish that she meets or equals any of the impairments in the listings. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Plaintiff argues that the ALJ failed to consider her impairments under Listing 3.02A, and that this error was harmful because her June 2018 PFT results establish that she meets the listing requirements. Dkt. 7 at 3-4.

The ALJ evaluated plaintiff's asthma under Listing 3.03 and her subglottic stenosis under section 5.00 of the listings, which covers digestive disorders.[1] Plaintiff

---

[1] It is unclear why the ALJ chose to assess plaintiff's subglottic stenosis under the listings for digestive disorders. Section 5.00 provides that "we evaluate digestive disorders that result in severe dysfunction of the liver, pancreas, and gastrointestinal tract[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 5.00A. The medical records indicate subglottic stenosis is a narrowing of the trachea resulting in airway obstruction. AR 339-344, 355-360.The most analogous listing for subglottic stenosis would be Listing 3.02A,

3

1  argues that the ALJ erred by not evaluating her impairments under Listing 3.02A, which
2  covers chronic respiratory disorders due to any cause except cystic fibrosis. Plaintiff
3  contends that she meets Listing 3.02A because her highest $FEV_1$ value in June 2018
4  was 1.13L. Dkt. 7 at 4.

5  Listing 3.02A is met if the claimant has a chronic respiratory disorder due to any
6  cause except cystic fibrosis, with a forced expiratory volume in one second ($FEV_1$),
7  measured by spirometry, that is less than or equal to the values specified in Tables I-A
8  or I-B for the claimant's age, gender, and height. 20 C.F.R. Pt. 404, Subpt. P, App. 1,
9  Listing 3.02A. The claimant's highest $FEV_1$ value is used to evaluate a respiratory
10 disorder under 3.02A. *Id.* at 3.00E(1).

11 Based on the table, plaintiff would meet Listing 3.02A if her highest $FEV_1$ value
12 was less than or equal to 1.25L. *Id.* at 3.02A. Because her highest $FEV_1$ was 1.13L on
13 June 1, 2018, (AR 341), plaintiff meets this requirement of Listing 3.02A. *See* AR 339-
14 344 (progress notes by Dr. Kimthuy T. Truong, M.D., 6-1-2018).

15 But to meet a Listing, an impairment "must meet *all* of the specified medical
16 criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original). This
17 includes criteria stated in the listing's introduction. *See* 20 C.F.R. § 404.1525(c)(3). "An
18 impairment that manifests only some of those criteria, no matter how severely, does not
19 qualify." *Sullivan*, 493 U.S. at 530.

20 Listing 3.00E sets the requirements for spirometry. 20 C.F.R. Pt. 404, Subpt. P,
21 App. 1, Listing 3.00E. An acceptable test requires at least three forced expiratory

---

chronic respiratory disorders due to any cause except cystic fibrosis. Section 3.00 specifies that "we evaluate respiratory disorders that result in obstruction[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.00A(1).

4

maneuvers during the same test session. *Id.* at 3.00E(1). The claimant must also be medically stable and must repeat the spirometry test following inhalation of a bronchodilator if the $FEV_1$ is less than 70 percent of their predicted normal value. *Id.* at 3.00E(2)(a)-(b). The report must contain the test date; the claimant's name, date of birth, gender, and height without shoes; any factor, if applicable, that can affect the interpretation of the test; and legible tracings of the forced expiratory maneuvers in a volume-time format showing the claimant's name and test date for each maneuver. *Id.* at 3.00E(3)(a)-(c).

      The Commissioner argues that plaintiff has not established harmful error because she did not meet all the criteria of Listing 3.02A. Dkt. 9 at 2. Specifically, the Commissioner alleges that plaintiff was not medically stable at the time of the test because she had recently been treated with prednisone for an exacerbation of symptoms.[2] *Id.* at 3 (citing AR 339) (noting that the same treatment records containing her spirometry results also indicated plaintiff had finished a course of prednisone about 1-2 weeks before the test).

      In reply, plaintiff states that the information cited by the Commissioner was taken from the history section of the progress note, yet there are not any records before June 1, 2018 that show the history of when, or under what circumstances, the prednisone was prescribed. Dkt. 10 at 3. Thus, she argues that the prednisone treatment could have been completed 1-2 weeks before her visit to her referring doctor, rather than 1-2

---

[2] Listing 3.00E(2)(a) provides examples of when a claimant may not be medically stable. These examples include when a claimant is experiencing or is within 30 days of completion of treatment for, an acute exacerbation of a chronic respiratory disorder, or when a claimant is within 2 weeks of a change in prescribed respiratory medicine. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.00E(2)(a)(i),(iii).

weeks before her pulmonary consult. *Id.* She concludes that because records from her referring doctor are not present for comparison, the record is therefore ambiguous as to whether she was medically stable at the time of her spirometry. *Id.*

The record shows that after the testing on June 1, 2018, plaintiff was again evaluated on July 11, 2018 by Dr. Anh Q. Truong, M.D. for chronic shortness of breath. AR 355-358. On July 18, 2018, Dr. Truong performed a "[d]irect laryngoscopy with dilation of sublottic stenosis," with a "[m]icro direct laryngoscopy with injection of triamcinolone into the anterior quadrants of the subglottis." AR 359-360. Dr. Truong also performed a "[b]iopsy of the subglottic stenosis." *Id.*

The ALJ made no findings as to whether plaintiff was medically stable at the time of her spirometry test because the ALJ failed to address Listing 3.02A. The ALJ evaluated plaintiff's asthma under Listing 3.03, which also requires a particular $FEV_1$ value. At the same time, the ALJ seems to ignore plaintiff's spirometry altogether as she concludes, erroneously, that "there is no evidence of an $FEV_1$ less than or equal to the value in Table VI-B for an individual of the claimant's age, gender, and height without shoes [1.65L]" AR 20. Thus, the ALJ has not made any findings on the sufficiency of plaintiff's spirometry report under Listing 3.02A or any other.

The record contains evidence that plaintiff may meet the requirements of Listing 3.02A. But ambiguity exists in the record as to whether she was medically stable when the spirometry test was done. It is the responsibility of the ALJ, not the Court, to resolve ambiguities and conflicts in the record. *Garrison*, 759 F.3d at 1010. An ALJ has a duty to "fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The duty to develop the record is triggered when, as here, the evidence is ambiguous or inadequate to allow for proper evaluation. *Id.*, *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *see also Vivianlynne Q. v. Comm'r of Soc. Sec.,* 2020 WL 4746228, at *3 (W.D. Wash. Aug. 17, 2020) (duty to develop triggered where the record was "replete with ambiguity" about whether plaintiff's impairment met the listing but also contained evidence that the condition met many and possibly all requirements).

Remand is appropriate if an ALJ fails to adequately consider a listing. *Frost v. Barnhart*, 314 F.3d 359, 363-64 (9th Cir. 2002) (reversing and remanding for further proceedings where ALJ determined plaintiff was not disabled without considering requirements of several applicable listing level regulations). On remand, the ALJ is directed to develop the record to resolve the question of plaintiff's medical stability at the time of her spirometry testing and properly consider whether plaintiff should be found disabled at step three of the sequential analysis under Listing 3.02A.

2. **Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ erred by failing to provide sufficient reasons for not incorporating fully plaintiff's subjective claims. Yet the Court has already concluded that the ALJ committed harmful error at step three. Because the Court finds reversible error on the step three issue, it need not resolve plaintiff's other argument regarding her symptom testimony.

## CONCLUSION

For those reasons, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further

7

1  administrative proceedings. On remand, the ALJ is directed to develop the record and
2  evaluate whether plaintiff's impairments meet or medically equal Listing 3.02A (and any
3  other applicable listing) and discuss relevant medical evidence. If on remand the ALJ
4  does not find plaintiff disabled at step three, she must continue with the remainder of the
5  sequential disability process, evaluating the medical evidence and plaintiff's testimony
6  anew, as necessary.

Dated this 17th day of September, 2025.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge